**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ZENA MAE ANDERSON,<br><br>        Plaintiff<br><br>        v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>        Defendant | CASE NO. 1:15-cv-00906-BAM<br><br>ORDER REVERSING AGENCY'S DENIAL OF BENEFITS AND ORDERING REMAND |

**INTRODUCTION**

Plaintiff Zena Anderson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act.[2] The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe. Having carefully considered the parties' briefs as well as the entire record

---

[1] Nancy A. Berryhill is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 3, 8.). On July 17, 2016, the action was reassigned to the Honorable Barbara A. McAuliffe for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

in this case, the Commissioner's decision is REVERSED in part and the case REMANDED for further proceedings consistent with this Order.

## FACTS AND PRIOR PROCEEDINGS

On March 15, 2012, Plaintiff filed her current application for SSI, alleging disability beginning January 1, 1989.  AR 158-167.[3]  Plaintiff's application was denied initially and on reconsideration. AR 97-113.  Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 117- 119.  ALJ Trevor Skarda held a hearing on November 4, 2013, and issued an order denying benefits on January 9, 2014.  AR 34-41.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 1-3.  This appeal followed.

**Hearing Testimony**

The ALJ held a video hearing on November 4, 2013, in Stockton, California. AR 55. Plaintiff appeared in person with attorney Mark Girdner. AR 55. Impartial Vocational Expert ("VE") Stephen B. Schmidt also testified. *Id.*

In response to questions from the ALJ, Plaintiff testified about her physical problems.  AR 56.  She has painful bulging discs in her neck that cause headaches and pain in her shoulders and arms. AR 57.  Her neck impairment also causes her to drop things such as dishes and cups.  AR 57.   On a ten-point scale where ten indicates the most severe pain, Plaintiff testified that she experiences pain of a 7 or 8.  AR 57. In February 2011, Plaintiff went to the emergency room for treatment of severe pain in her right arm and headaches.  AR 57.  Her physician, Dr. Cohen, recommended that she continue to use a heat sock and a TENS unit for the pain. AR 58.  Plaintiff testified that the pain in her neck also interferes with sleep and her ability to do household chores such as sweeping and mopping.  AR 60-61.  She is unable to lift a gallon of milk without using two hands. AR 62. According to Plaintiff, she can sit for about one hour before she has to get up and walk around. AR 62-63.  She can walk a "couple of blocks" before her pain "sometimes" increases. AR 63.

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

The ALJ asked additional questions about Plaintiff's limited work history. Plaintiff testified that she worked at a cheese company doing general labor for two months—June 2006 to August 2006. AR 63, 214. She also previously worked for Costco doing food demonstrations from December 2005 to May 2006. AR 214. Plaintiff also did some previous work as a janitor in 2001. AR 66, 214-215.

When asked about her medication, Plaintiff testified she takes Morphine, Hydrocodone, Baclofen, Metoprolol, Neurontin and Amitriptyline for headaches. AR 64-65. Plaintiff also previously smoked medical marijuana for her pain but quit smoking because government funding precludes prescriptions for pain medications when a patient is consuming medical marijuana. AR 64-65, 68. In February 2012, Plaintiff also had an epidural injection. AR 59.

Following Plaintiff's testimony, the ALJ asked the VE the type of work that could be completed by a hypothetical individual that can perform less than the full range light work, but she was limited to " . . . occasional overhead reaching." AR 70. The VE responded that the individual is unable to perform Plaintiff's past relevant work as a hand packer. AR 70. However, that individual could perform work as an office helper. AR 70.

**Medical Record**

The entire medical record was reviewed by the Court. AR 256-561. The medical evidence will be referenced below as necessary to this Court's decision.

### THE ALJ'S DECISION

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 34-41. The ALJ found that Plaintiff's degenerative disc disease of the cervical spine was severe. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairment did not meet or exceed any of the listed impairments individually or in combination.

Based on a review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of light work. She could frequently perform postural activities, but was limited to occasional overhead reaching bilaterally. AR 37. The ALJ found that Plaintiff could not perform any past relevant work, but that there were

jobs that existed in significant numbers in the national economy that Plaintiff could still perform. AR 40-41. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 41.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that they are not only unable to do their previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In her pending motion, Plaintiff asserts that the ALJ improperly: (1) evaluated her credibility; (2) determined her RFC; (3) relied on the VE's testimony which was inconsistent with the Dictionary of Occupational Titles ("DOT"); and (4) weighed the medical evidence;. (Doc. 14).

## DISCUSSION

**1.    The ALJ Gave Sufficient Reasons to Discount Plaintiff's Credibility**

Plaintiff first argues that the ALJ failed to give clear and convincing reasons for rejecting her subjective complaints. (Doc. 14 at 17-19). The Court disagrees.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). Other factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ rejected Plaintiff's subjective symptom testimony for several clear and convincing reasons. First, in discounting Plaintiff's overall credibility, the ALJ noted that, despite the positive diagnostic findings, Plaintiff's treatment was relatively conservative and routine including heat, massage, physical therapy, one epidural injection and analgesic medications. AR 38, 39, 258-259, 273-281, 383-414. The ALJ further observed that Plaintiff was never a candidate for surgery. AR 38, 273-275, 279-280. Additionally, Plaintiff's symptoms improved with treatment.

Evidence of conservative treatment may diminish a Plaintiff's credibility and is a sufficient reason to discount a claimant's testimony regarding the severity of impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (conservative treatment was sufficient to discredit testimony). Moreover, medication and its effectiveness is among the many factors the ALJ may consider when evaluating credibility. *See Bunnell*, 947 F.2d at 346; SSR 88-13, 1988 SSR LEXIS 14. The ALJ was therefore free to credit evidence that Plaintiff's impairments largely alleviated or improved with conservative treatment and medication when rejecting Plaintiff's credibility.

Second, the ALJ found that Plaintiff's activities of daily living were consistent with light work. AR 39. The ALJ may properly discount Plaintiff's credibility based on daily activities. *Orn v. Astrue*, 495 F.3d at 638. Here, Plaintiff's daily activities were consistent with light exertion including cooking, mopping, vacuuming, dusting, and driving a car. AR 39; *see Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (Evidence of a claimant's daily activities may be relevant to evaluating the credibility of a claimant's pain testimony.). Based on this evidence in the record, the ALJ could properly discredit Plaintiff's testimony because her level of activity is inconsistent with the degree of impairment that she alleges. *See Berry v. Astrue*, 622 F.3d 1228, 1235 (inconsistencies between self-reported symptoms and activities supported adverse credibility finding).

Additionally, the ALJ provided his own observations regarding Plaintiff's conduct during the hearing. In particular, the ALJ cited that, during the hearing, Plaintiff was "moving her hands and nodding her head up and down without apparent difficulty." AR 39. The Ninth Circuit has determined that, in assessing a claimant's credibility, an ALJ may rely upon "ordinary techniques of credibility evaluation," including the ALJ's personal observations of the claimant at the administrative hearing. *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (determining that ALJ properly relied in part on claimant's demeanor at hearing in assessing credibility); *Drouin v. Sullivan*, 966 F.2d 1255, 1258-59 (9th Cir. 1992) (observations of ALJ during the hearing, along with other evidence, is substantial evidence for rejecting testimony). The ALJ was entitled to consider observations, particularly Plaintiff's ability to move her head and neck given her "allegations of disabling neck pain," in determining that her movements "further

weaken[ed]" her credibility.

The fourth and final reason the ALJ gave for discounting Plaintiff's testimony was Plaintiff's sporadic work history. AR 39. At the hearing, the ALJ noted that, throughout her lifetime, Plaintiff's total earnings amount to $2,500. AR 66. Plaintiff further admitted at the hearing that she has never held a full time job. AR 66. A poor work history is a clear and convincing reason that the ALJ may rely on to reject a Plaintiff's subjective testimony. *See Thomas*, 278 F.3d at 959 (finding an extremely poor work history was a clear and convincing reason that negatively affected claimant's credibility regarding her inability to work).

Given the above, the ALJ properly discounted Plaintiff's subjective symptom testimony and provided clear and convincing reasons that are supported by substantial evidence in the record. AR 38-39. Remand is not warranted on this issue.

**2. The ALJ Properly Determined Plaintiff's RFC**

Plaintiff next argues that the ALJ's RFC assessment erroneously failed to include a grasping and handling limitation. According to Plaintiff, her testimony that she drops things coupled with the electrodiagnostic testing established that she has "mild carpal tunnel syndrome on the right side," requiring the ALJ to include limitations for grasping and handling in her RFC assessment. The Court disagrees.

A claimant's RFC is what she is capable of doing despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1); *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184 (S.S.A. July 2, 1996). An RFC assessment is ultimately an administrative finding reserved to the Commissioner, based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, as well as observations by family members and the claimant's own subjective symptoms. 20 C.F.R. § 404.1545(a)(3). An RFC that does not account for all of a claimant's limitations is defective. *Valentine*, 574 F.3d at 690.

In formulating a claimant's RFC, an ALJ is not required to include limitations that are not

supported by substantial evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) "Conversely, an ALJ is not free to disregard properly supported limitations." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). An ALJ may omit limitations arising out of a claimant's subjective complaints only if the subjective complaints have been specifically discredited. *Compare, Copeland v. Bowen*, 861 F.2d 536, 541 (9th Cir. 1988) (RFC excluding subjective pain limitations was supported by substantial evidence where ALJ specifically discredited claimant's pain testimony) with *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040-41 (9th Cir. 2007) (RFC excluding subjective pain limitations was not supported by substantial evidence where ALJ did not provide clear and convincing reasons for discrediting claimant's testimony).

"A claimant bears the burden of proving that an impairment is disabling." *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985). A plaintiff's claim may be rejected when the plaintiff "produced no clinical evidence showing that [medication] use impaired [her] ability to work." *Id.* Diagnosis alone will not establish disability. *See Barker v. Sec'y of HHS*, 882 F.2d 1474, 1477 (9th Cir. 1989).

Contrary to Plaintiff's argument, a limitation for grasping and handling is not supported by substantial evidence in the record. As discussed above, the ALJ properly determined Plaintiff's subjective complaints lacked credibility.  In finding that Plaintiff could do light work, the ALJ noted that Plaintiff performed her daily activities including household chores and physical activities which showed good functional ability in her hands. AR 36, 245-247. The record further demonstrates that in assessing Plaintiff's grasping and handling capabilities, the ALJ noted Plaintiff's diagnosis of mild right side carpal tunnel syndrome, but found there was no clinical correlation that it affected her ability to use her hands and arms in a functional manner. The ALJ also found that while Plaintiff received wrist splints to wear she reported that her symptoms had improved within months. AR 36, 238-239, 246-247, 266.

Accordingly, the record lacks substantial evidence to support the need for a handling and grasping limitation.  Therefore, the ALJ did not err in declining to include additional functional limitations in his analysis of Plaintiff's RFC. *Osenbrock*, 240 F.3d at 1165 (ALJ may limit hypothetical to impairments that are supported by substantial evidence in the record).

**3.   The ALJ's Step Five Determination**

Plaintiff also argues that the ALJ's step five determination is in error. According to Plaintiff, the ALJ restricted her to occasional overhead reaching bilaterally, however the representative job of "office helper," suggested by the VE and as explained by the DOT requires a capacity for "frequent reaching, handling and fingering."  (Doc. 14 at 22).  Plaintiff thus argues that the VE's testimony and the DOT are in conflict. *See* DOT No. 239.567-010; 1991 WL 672232.[4] (Doc. 14 at 22-24).  The Court agrees.

The ALJ asked the vocational expert to consider a hypothetical individual who, among other limitations, was limited to "occasional overhead reaching bilaterally."  AR 70.  With the limitations identified by the ALJ in mind, the vocational expert responded the person could perform work as an office helper. AR 37.

Pursuant to SSR 00-4p, 2000 SSR LEXIS 86, occupational evidence provided by a vocational expert "generally should be consistent with the occupational information supplied by the DOT." 2000 SSR LEXIS 8 at *4, 2000 WL 1898704 at *2. When there is a conflict between the testimony of the vocational expert and the Dictionary of Occupational Titles, "the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert testimony] to support a determination or decision about whether the claimant is disabled." *Id.* Further, SSR 00-4p, 2000 SSR LEXIS 8 provides:

> At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

---

[4]   DOT code 239.567-010, which corresponds to office helper, states in relevant part:

> Performs any combination of following duties in business office of commercial or industrial establishment: Furnishes workers with clerical supplies. Opens, sorts, and distributes incoming mail, and collects, seals, and stamps outgoing mail. Delivers oral or written messages. Collects and distributes paperwork, such as records or timecards, from one department to another. Marks, tabulates, and files articles and records. May use office equipment, such as envelope-sealing machine, letter opener, record shaver, stamping machine, and transcribing machine. May deliver items to other business establishments [DELIVERER, OUTSIDE (clerical) 230.663-010]. May specialize in delivering mail, messages, documents, and packages between departments of establishment and be designated Messenger, Office (clerical). May deliver stock certificates and bonds within and between stock brokerage offices and be designated Runner (financial).

DICOT 239.567-010.

> Neither the DOT nor the [vocational expert] evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [vocational expert] testimony rather than on the DOT information.

*Id.* Accordingly, the Ninth Circuit has determined an ALJ must inquire "whether the testimony conflicts with the Dictionary of Occupational Titles," and may only rely upon conflicting expert testimony when "the record contains persuasive evidence to support the deviation." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

In his decision denying benefits, the ALJ asserted, "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." AR 41. However, as Plaintiff observes, the sole job identified by the ALJ requires more than occasional reaching. The job of office helper requires frequent reaching, which means "from 1/3 to 2/3 of the time." DICOT 239.567-010.

Courts throughout the Ninth Circuit and this district have determined there is an apparent conflict where the ALJ limits a claimant to "occasional reaching" but a vocational expert testified a worker with the limitation was able to perform work the Dictionary of Occupational Titles indicated required constant or frequent reaching. *See, e.g., Murry v. Colvin,* 2016 U.S. Dist. LEXIS 12345 (E.D. Cal. Feb. 1, 2016) (VE's testimony "inconsistent" with DOT where claimant "limited to occasional reaching," but VE opined that claimant could perform jobs requiring frequent reaching); *Lang v. Commissioner of Social Security*, 2014 U.S. Dist. LEXIS 48558, 2014 WL 1383247, \*\*7-8 (E.D. Cal. Apr. 8, 2014) (finding potential conflict between VE's opinions and DOT where VE testified that plaintiff could perform three jobs that require "frequent reaching"— a requirement that "could potentially encompass frequent overhead reaching" which plaintiff could not do); *Giles v. Colvin*, 2013 U.S. Dist. LEXIS 132188, 2013 WL 4832723, \*4 & n.4 (C.D. Cal. Sep. 10, 2013) (plaintiff's limitation to "occasional overhead reaching" bilaterally conflicted with VE's testimony that plaintiff could perform representative jobs which required "frequent or constant" reaching); *Kirby v. Astrue*, 2012 U.S. Dist. LEXIS 157281, 2012 WL

5381681, *3 (C.D. Cal. Nov. 1, 2012) (finding "potential conflict" between VE testimony and DOT where plaintiff was limited to "no more than occasional reaching 'at or above shoulder level'" and representative jobs VE identified required "reaching 'frequently'"—noting "DOT may well contemplate a requirement of omnidirectional reaching") (citations omitted); *Duff v. Astrue*, 2012 U.S. Dist. LEXIS 122442, 2012 WL 3711079, *4-5 (C.D. Cal. Aug. 28, 2012) (remanding for further proceedings where VE gave no explanation for apparent inconsistency in VE's testimony that hypothetical claimant who was "[unable to] use [] upper extremities for above the shoulder work" was still able to perform occupations which required constant or frequent reaching); *Bentley v. Astrue*, 2011 U.S. Dist. LEXIS 77042, 2011 WL 2785023, at *3-*4 (C.D. Cal. July 14, 2011) (jobs which, according to the DOT, require "frequent reaching" inconsistent with plaintiff's inability to reach "above the shoulder level bilaterally"); *Hernandez v. Astrue*, 2011 U.S. Dist. LEXIS 6377, 2011 WL 223595, *5 (C.D. Cal. Jan. 21, 2011) (finding "apparent conflict" between DOT and VE's testimony that hypothetical person (who was precluded from "work at or above shoulder level") could perform job that requires occasional reaching, since "DOT's definition of reaching contemplates reaching in all directions").

Here, the ALJ determined Plaintiff was "limited to occasional overhead reaching bilaterally." AR 37. However, as Plaintiff observes, the sole job identified by the vocational expert requires more than occasional reaching. Consequently, the Court finds the VE's testimony that Plaintiff could perform the requirements of an "office helper" conflicts with the job descriptions of the Dictionary of Occupational Titles, which indicates that position requires reaching on a frequent basis. While Defendant argues that there is no apparent inconsistency between the DOT and the VE because the office helper job description "does not describe any activities that might require overhead reaching," Defendant's contention lacks merit. (Doc. 18 at 10). Since the Commissioner and numerous courts have concluded that "reaching" encompasses the ability to reach overhead, an apparent conflict exists when, without explanation, an ALJ finds that someone who is limited to occasional overhead reaching nonetheless can perform DOT jobs that require frequent reaching.

The Court further rejects Defendant's suggestion that it resolve the apparent conflict in this

case by parsing the DOT's narrative job description to conclude that the office helper job includes no more than occasional reaching. This type of guesswork by the Court is prohibited and is "exactly the sort of inconsistency the ALJ should have resolved with the expert's help." *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). Under SSR 00-4p, 2000 SSR LEXIS 8 and Ninth Circuit law, the ALJ has an affirmative duty to resolve an apparent conflict in the first instance. *See Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) ("When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency. The ALJ must ask the expert to explain the conflict and then determine whether the vocational expert's explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination").

While the ALJ initially asked the VE to indicate if his " . . . testimony was inconsistent with the Dictionary of Occupational Titles," there is no indication in the record that the ALJ nor the VE was even aware that reaching, more than occasionally, was required by the office helper job. Since the vocational expert did not acknowledge that there was a potential conflict between his testimony and the DOT, neither the vocational expert nor the ALJ attempted to explain or justify the apparent potential inconsistency in any manner. Because the ALJ did not address the apparent conflict, and the vocational expert did not explain his reasoning, the record cannot support the deviation. As a result, the court cannot determine whether substantial evidence supports the ALJ's step-five finding that Plaintiff could perform other work. *See Meyer v. Astrue*, 2010 U.S. Dist. LEXIS 110442, 2010 WL 3943519, at **8-9 (E.D. Cal. Oct. 1, 2010) (holding that the ALJ committed reversible error in relying on a VE's testimony that a claimant who was limited to occasional reaching above the shoulder level with the left upper extremity could perform jobs that the DOT classified as requiring frequent reaching where the ALJ did not obtain a reasonable explanation of this apparent conflict from the VE).

**4. Remand is Required**

The decision whether to remand for further proceedings or order an immediate award of

benefits is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See *Benecke v. Barnhart*, 379 F.3d 587, 593-96 (9th Cir. 2004).

In this case, there are outstanding issues that must be resolved before a final determination can be made. The ALJ failed to address the apparent conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles. Based upon the record, the Court is unable to determine whether Plaintiff is able to perform work existing in significant numbers in the national economy. Accordingly, a remand for further proceedings is appropriate in this matter. *See Zavalin*, 778 F.3d at 848 (an ALJ's failure to reconcile apparent conflict was not harmless where the Court "cannot determine [from the record] whether substantial evidence supports the ALJ's step-five finding"); *see also Dieugenio v. Astrue*, 2010 U.S. Dist. LEXIS 3894, 2010 WL 317269 at *3 (C.D. Cal. Jan. 19, 2010) (holding that where the expert claimed that his testimony was consistent with information in the Dictionary of Occupational Titles but a review of the descriptions "reveal[ed] a conflict with respect to the jobs identified," failure to address the conflict warranted remand for further proceedings).[5]

## CONCLUSION

Based on the foregoing, this matter is **HEREBY REVERSED** and the case **REMANDED** to the ALJ for further proceedings consistent with this decision. The Clerk of the Court is **DIRECTED** to enter judgment in favor of Plaintiff.

IT IS SO ORDERED.

Dated:   **February 1, 2017**            /s/ *Barbara A. McAuliffe*
                                         UNITED STATES MAGISTRATE JUDGE

---

[5] In light of the Court's ruling and remand for further proceedings, the Court need not further determine at this time whether the ALJ properly discounted Dr. Cohen's opinion.  (Doc. 14 at 14-17).